AF Approval ___NA___                    Chief Approval ___RBH___

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 6:20-cr-160-GAP-EJK

MICHAEL T. WATTERS

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by

KARIN HOPPMANN, Acting United States Attorney for the Middle District

of Florida, and the defendant, Michael T. Watters, and the attorney for the

defendant, Karla Reyes, Esq., mutually agree as follows:

**A.** **Particularized Terms**

1.    Counts Pleading To

The defendant shall enter a plea of guilty to Counts One and

Eleven of the Indictment.  Count One charges the defendant with wire fraud,

in violation of 18 U.S.C. § 1343.  Count Eleven charges the defendant with

aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1).

Defendant's Initials _TMW_

2.    <u>Maximum Penalties</u>

Count One carries a maximum sentence of 20 years' imprisonment, a maximum fine of $250,000, or twice the gross gain caused by the offense, or twice the gross loss caused by the offense, whichever is greater, a term of supervised release of not more than three years, and a special assessment of $100.

Count Eleven carries a mandatory sentence of two years' imprisonment to be served consecutive to any term of imprisonment for Count One, a maximum fine of $250,000, a term of supervised release of not more than one year, and a special assessment of $100.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offenses, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offenses, or to the community, as set forth below.

3.    <u>Elements of the Offenses</u>

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty. The elements of Counts One are:

<u>First</u>:        The defendant knowingly devised or participated in a scheme to defraud, or to obtain money or property by using false pretenses, representations, or promises;

Defendant's Initials _MMW_                    2

Second:    The false pretenses, representations, or
promises were about a material fact;

Third:    The defendant acted with the intent to defraud; and

Fourth:    The defendant transmitted or caused to be transmitted by
wire some communication in interstate commerce to help
carry out the scheme to defraud.

The elements of Count Eleven are:

First:    The defendant knowingly transferred, possessed, or used
another person's means of identification;

Second:    The defendant did so without lawful authority; and

Third:    The defendant did so during and in relation to the crime of
wire fraud.

4.    Counts Dismissed

At the time of sentencing, the remaining counts against the

defendant, Counts Two through Ten and Twelve through Twenty-Five, will

be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5.    No Further Charges

If the Court accepts this plea agreement, the United States

Attorney's Office for the Middle District of Florida agrees not to charge

defendant with committing any other federal criminal offenses known to the

United States Attorney's Office at the time of the execution of this agreement,

related to the conduct giving rise to this plea agreement.

Defendant's Initials                     3

6.      <u>Guidelines Sentence</u>

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

7.      <u>Acceptance of Responsibility - Three Levels</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant

Defendant's Initials _MW_                4

complies with the provisions of USSG §3E1.1(b) and all terms of this Plea
Agreement, including but not limited to, the timely submission of the financial
affidavit referenced in Paragraph B.5., the United States agrees to file a motion
pursuant to USSG §3E1.1(b) for a downward adjustment of one additional
level. The defendant understands that the determination as to whether the
defendant has qualified for a downward adjustment of a third level for
acceptance of responsibility rests solely with the United States Attorney for the
Middle District of Florida, and the defendant agrees that the defendant cannot
and will not challenge that determination, whether by appeal, collateral attack,
or otherwise.

8.     Mandatory Restitution to Victim(s) of Offense of Conviction

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full
restitution to the victims of the wire fraud scheme in the amounts of
$47,105.22 to Certegy Payment Solutions, $3,461.74 to Lowes, and $381.37 to
Target.

9.     Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately
and voluntarily any and all assets and property, or portions thereof, subject to
forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c),

Defendant's Initials _MW_                5

whether in the possession or control of the United States, the defendant or defendant's nominees.

The assets to be forfeited specifically include, but are not limited to, a money judgment in the amount of $50,948.33, representing the amount of proceeds obtained as a result of the scheme charged in Count One.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government.  Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered.  In the event the forfeiture is omitted from the judgment, the

Defendant's Initials _MW_

defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees that the United States shall, at its option, be entitled to the forfeiture of any property (substitute assets) of the defendant up to the value of the money judgment. The defendant further agrees that the United States is seeking a money judgment because, as a result of the defendant's actions, the criminal proceeds cannot be located despite the exercise of due diligence. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

The defendant agrees to take all steps necessary to identify and locate all substitute assets and to transfer custody of such assets to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets. The defendant further agrees to be

Defendant's Initials _MW_                    7

polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to any substitute assets before the defendant's sentencing. In addition to providing full and complete information about substitute assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the plea agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding

Defendant's Initials _MW_                8

the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed money judgment amount, is collected in full.

**B.** **Standard Terms Conditions**

    1.   Restitution, Special Assessment and Fine

        The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims

Defendant's Initials *MW*          9

Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

2.   <u>Supervised Release</u>

The defendant understands that the offenses to which the defendant is pleading provides for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.   <u>Immigration Consequences of Pleading Guilty</u>

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.   <u>Sentencing Information</u>

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the

Defendant's Initials _____   10

background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the counts to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

    5.    <u>Financial Disclosures</u>

        Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this plea agreement, consents to the release of the defendant's tax returns for the

previous five years.  The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.  The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

      6.    <u>Sentencing Recommendations</u>

        It is understood by the parties that the Court is neither a party to nor bound by this agreement.  The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office.  The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office.  Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the

Defendant's Initials _MW_        12

government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement.  The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.   Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

Defendant's Initials _MW_                    13

8.    Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.    Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.    Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind.  The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation

Defendant's Initials _MW_                    14

and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.   Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set

Defendant's Initials _MW_                     15

forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12.     Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13.     Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 28ᵗʰ day of June_____, 2021

KARIN HOPPMANN
Acting United States Attorney

_____            _____
MICHAEL T. WATTERS                    Chauncey A. Bratt
Defendant                             Assistant United States Attorney

_____            _____
Karla Reyes, Esq.                     Roger B. Handberg
Attorney for Defendant                Assistant United States Attorney
                                      Chief, Orlando Division

Defendant's Initials _____                    16

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 6:20-cr-160-GAP-EJK

MICHAEL T. WATTERS

## FACTUAL BASIS

On May 1, 2019, the U.S. Secret Service in Orlando, FL was contacted
by C.J., a Fraud Investigations Manager from Certegy Payment Solutions
("Certegy"),[1] who stated that an individual, later identified as MICHAEL T.
WATTERS ("WATTERS"), had been passing numerous counterfeit checks at
various Lowes stores in the Orlando, FL area.  C.J. advised that WATTERS
made the purchases at the Lowes stores using counterfeit checks, following
which he returned the purchased items for cash.

After obtaining additional information from corporate investigators and
local law enforcement, the investigating U.S. Secret Service agent determined
that between December 9, 2018, and May 1, 2019, approximately 265
counterfeit checks were passed by WATTERS at various Lowes stores in the

---

[1] Certegy is a third-party contractor that assists with processing, and determining the
legitimacy of, payments made by Lowes's customers.

Defendant's Initials                     17

Orlando area. Many of these incidents were captured on surveillance video. WATTERS sometimes used counterfeit personal checks to conduct this fraud and at other times used counterfeit commercial checks.

Video surveillance and records obtained from Lowes show that when he presented counterfeit personal checks to Lowes employees, WATTERS also presented counterfeit Florida driver's licenses for identification. These counterfeit Florida driver's licenses listed various personal identifying information including names, dates of birth, and driver's license numbers. Although the names listed on the driver's licenses appeared to be aliases, most of the driver's license numbers and dates of birth displayed on the fake driver's licenses belonged to real victims, and the dates of birth and driver's license numbers correlated with each other and with the true dates of birth of the victims. Further investigation revealed that most of the driver's license numbers and dates of birth listed on the counterfeit driver's licenses belonged to current or former local, state, or federal legislators.

Many of these counterfeit driver's license numbers were sent to Certegy by the Lowes employees accepting the checks at the time of purchase, which caused wire communications to be transmitted to verify that individuals with those driver's license numbers had not previously presented fraudulent checks at any other stores that utilize Certegy Payment Solutions. Specifically, for

Defendant's Initials _MW_                    18

approximately 80 of the fraudulent checks presented at Lowes by WATTERS, wires were sent to Brown Deer, Wisconsin to cross check the driver's license numbers presented by WATTERS.

Additionally, there were approximately 88 fraudulent checks written against commercial accounts presented at Lowes by WATTERS, whereby Certegy sent wires to Brown Deer, Wisconsin to verify that the bank account numbers listed on the checks had not previously been presented on fraudulent checks at any other stores that utilize Certegy Payment Solutions.

The following are some of the fraudulent purchases made with counterfeit checks and fake driver's licenses, all of which caused interstate wires to be sent to Brown Deer, Wisconsin:

| Date | Location of Lowes Store | PII of Victim | Check Amount | Bank on Check | Alias Used by WATTERS |
|------|-------------------------|---------------|--------------|---------------|-----------------------|
| 3/16/19 (Count One) | 110 State Road 434, Altamonte Springs | R.B. (Former FL State House Rep) | $97.86 | JP Morgan Chase Bank | Christopher Bell |
| 3/16/19 | 110 State Road 434, Altamonte Springs | R.B. (Former FL State House Rep) | $89.97 | JP Morgan Chase Bank | Christopher Bell |
| 3/17/19 | 8700 W. Colonial Dr., Orlando | F.P. (Former FL State House Rep) | $96.90 | JP Morgan Chase Bank | Christopher Pike |
| 3/17/19 | 8700 W. Colonial Dr., Orlando | F.P. (Former FL State House Rep) | $97.96 | JP Morgan Chase Bank | Christopher Pike |
| 3/17/19 | 8700 W. Colonial Dr., Orlando | F.P. (Former FL State House Rep) | $97.96 | JP Morgan Chase Bank | Christopher Pike |

Defendant's Initials _MW_                    19

| 3/20/19 | 8700 W. Colonial Dr., Orlando | K.K. (Former FL State House Rep) | $95.40 | JP Morgan Chase Bank | Christopher Keller |
| 3/28/19 | 1651 W. OBT, Apopka | D.C. (Former FL State Senator) | $96.90 | JP Morgan Chase Bank | Christopher Clark |
| 3/28/19 | 1651 W. OBT, Apopka | D.C. (Former FL State Senator) | $138.22 | JP Morgan Chase Bank | Christopher Clark |
| 4/06/19 | 18795 US Hwy 441, Mt. Dora | W.M. (FL State Senator) | $138.93 | JP Morgan Chase Bank | Christopher Myers |
| 4/09/19 | 110 State Road 434, Altamonte Springs | R.S. (Former FL State Senator) | $107.71 | JP Morgan Chase Bank | Christopher Stevens |

For each of the transactions in the above table, WATTERS was captured on the store surveillance video at the time of the transaction. In addition, during the passing of the above checks, WATTERS was on pre-trial supervision by the State of Florida due to a previous arrest for Criminal Use of Personal Identification Information. As a result of the pre-trial supervision, WATTERS was required to wear an ankle bracelet that had GPS monitoring capabilities. A review of the GPS locations of WATTERS's ankle monitoring bracelet placed WATTERS at the specific Lowes stores on the same dates and times as the fraudulent transactions being investigated.

**Arrest of WATTERS by WGPD and Inventory Search of his Vehicle**

On May 25, 2019, WATTERS was arrested by the Winter Garden Police Department ("WGPD"), after he presented a counterfeit check at a Target Department store in Winter Garden, FL. WATTERS was stopped

Defendant's Initials _MW_                    20

outside of the Target store in his vehicle following the incident. During the stop of WATTERS, the WGPD observed a wallet and checks in plain view on the front passenger seat of the vehicle where WATTERS had been sitting. During a search of the vehicle incident to the arrest of WATTERS, police recovered from the wallet several counterfeit Chase Bank checks and several counterfeit Florida driver licenses, each of which displays WATTERS's photograph but false dates of birth and driver's license numbers.

Prior to towing the vehicle that WATTERS was in on May 25, 2019, WGPD officers conducted an inventory search of the vehicle and recovered numerous items consistent with the production of counterfeit bank checks and false identifications, including counterfeit Florida driver's licenses, Lowes in-store credit cards, over 200 Lowes store transaction receipts, other miscellaneous store transaction receipts, counterfeit Chase Bank checks, scraps of failed attempts of printed counterfeit checks, "Chase" blank check stock paper,[2] sheets of "Chase Bank" checks, and counterfeit "Chase Bank" checks in the name of "Allied Professional Services, Inc" or "Christopher Myers."

---

[2] Check stock paper is paper that is used to produce realistic-looking checks. Often during the manufacturing of counterfeit checks, criminals conduct test prints that result in remnants of unusable checks.

Defendant's Initials *MW*                          21

## Interview of WATTERS's Son

On August 22, 2019, law enforcement officers interviewed WATTERS's son, J.W., at J.W.'s residence. J.W. stated that in the past, WATTERS had explained to J.W. how he conducted his fraudulent activities. According to J.W., WATTERS stated that he retrieved information for famous individuals from the internet, obtaining the individual's full name, date of birth, and state of residence. If the individual resided in the State of Florida, WATTERS would utilize various driver license "lookup" databases on the internet to obtain the individual's Florida driver's license number. WATTERS would then utilize his computer to affix the information onto a digital color copy of a Florida driver's license. Once the fraudulent information was affixed on the driver's license, WATTERS would print the driver's license and information onto photocopy paper. When WATTERS would present the fictitious driver's license to a clerk at a retail establishment, he would display the driver's license in a case in his wallet so that the clerk could not feel the paper material. If a clerk asked WATTERS to remove the driver's license from his wallet, he would inform the clerk that his wife made him glue the driver's license to the interior of his wallet so that it could not be removed. According to J.W., after WATTERS was released on bond from

Defendant's Initials _MW_                    22

the Seminole County Jail, he returned to creating fraudulent driver's licenses and uttering counterfeit checks until his arrest by the WGPD.

Later on August 22, 2019, after receiving a telephone call from J.W., law enforcement officers returned to J.W.'s residence. During this visit, J.W. informed law enforcement officers that he was in possession of a laptop previously used by WATTERS to conduct fraudulent activities. J.W. stated that he no longer wanted the laptop, and he consented to voluntarily surrender it to the law enforcement officers.

### Analysis of WATTERS's Laptop

In December 2019, after obtaining a federal search warrant to search the laptop, a forensic examiner from the U.S. Secret Service imaged the laptop. Her search revealed a number of counterfeit Florida driver's license templates displaying WATTERS's photograph, but the names of the aliases that he created and the true driver's license numbers and dates of birth of the victims. One of the driver's license templates displays the true driver's license number and true date of birth of R.B., a former FL State representative. The file was last modified on March 16, 2019 at 8:23 a.m., which was approximately 45 minutes prior to when WATTERS used a counterfeit Florida driver's license in the name of R.B. at the Lowes store that same morning.

Defendant's Initials _MW_                    23

Also located on the laptop were counterfeit driver's license templates for F.P., K.K., D.C., W.M., and R.S., displaying these victims' true dates of birth and driver's licenses.

The search of WATTERS's laptop also revealed multiple public internet searches for many of the victims whose dates of birth and driver's license numbers he used (A publicly-available webpage lists the dates of birth of state legislators, whose dates of birth WATTERS used, together with the first letter of the last name of the legislators, to generate their true Florida driver's license numbers). Also on WATTERS's laptop was evidence that he had been using a Florida driver's license builder to ascertain the true driver's licenses of the victims whose identities he used for the counterfeit Florida driver's licenses.

### Total Loss Amount

The parties agree that the total intended loss amount from WATTERS's scheme is $53,156.43.  The total actual loss amount was $50,948.33, which includes $47,105.22 in losses to Certegy, $3,461.74 in losses to Lowes, and $381.37 in losses to Target.

Defendant's Initials *MW*                    24

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 6:20-cr-160-GAP-EJK

MICHAEL T. WATTERS

## PERSONALIZATION OF ELEMENTS

### A. **Count One**

**First:**      Did you knowingly devise or participate in a scheme to defraud, or to obtain money or property by using false pretenses, representations, or promises?

**Second:**    Did the false pretenses, representations, or promises you made relate to a material fact?

**Third:**      Did you act with the intent to defraud?

**Fourth:**    Did you transmit or cause to be transmitted by wire some communication in interstate commerce to help carry out the scheme to defraud?

Defendant's Initials _MW_                25

**B.** <u>**Count Eleven**</u>

First:        Did you knowingly transfer, possess, or use another person's

              means of identification?

<u>Second</u>:   Did you do so without lawful authority?

<u>Third</u>:    Did you do so during and in relation to the crime of wire fraud?

Defendant's Initials _MW_                    26